**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
:
CAROLINA GUICHARDO,                              :
:
Plaintiff,             :         21-CV-0355 (OTW)
:
-against-                 :         **OPINION & ORDER**
:
:
:
:
COMMISSIONER OF SOCIAL SECURITY,                 :
:
Defendant.            :
:
:
------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

I.   **Introduction**

On March 2, 2018, Plaintiff Carolina Guichardo filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 1, 2017. (ECF 16 at 66) (SSA Administrative Record, hereinafter "R."). On May 31, 2018, Plaintiff's application was denied after an initial review. (R. 74-75, 76-80). On June 21, 2018, Plaintiff requested a hearing before Administrative Law Judge ("ALJ") Moises Penalver. (R. 82-83). A hearing was held before the ALJ on September 24, 2019. (R. 43-65). Plaintiff attended the hearing *pro se*. (R. 43-65). By written decision dated August 27, 2020, the ALJ found that Plaintiff was not disabled under the Social Security Act ("SSA"). (R. 1-8). The ALJ found that Plaintiff had severe impairments of vertigo, diabetes, hypertension, Achilles's tendonitis on the right, and obesity. (R. 34). The ALJ found that these impairments did not fall under any of the impairments listed under the SSA's

Listing of Impairments ("Listings"). (R. 34). Furthermore, based on Plaintiff's residual functional capacity ("RFC"), the ALJ concluded that Plaintiff was unable to perform any past relevant work but retained the RFC to perform light work. (R. 34).

On September 28, 2020, Plaintiff appealed to the Appeals Council (R. 9-16), which denied review of the ALJ's decision on November 30, 2020. (R. 1-4). This was the final act of the Commissioner. Plaintiff subsequently brought this action on January 13, 2021. (ECF 2). The parties consented to my jurisdiction on April 20, 2021 (ECF 11), and filed their Joint Stipulation in Lieu of Motions for Judgment on the Pleadings on May 25, 2022. (ECF 32).

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the decision of the Commissioner of Social Security is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

## II.     Background

### A.    Plaintiff's Medical History

Plaintiff, born in 1969, was 48 years old at the onset of her alleged disability. (R. 53). She has a college education (R. 53), and she was self-employed, worked for the City of New York, and worked as a home health attendant and an assistant teacher. (R. 55-57). From 2011 to 2013, Plaintiff was seen at Columbia-Presbyterian and reported left arm paresthesia, dizziness, nausea, chest pain, and peripheral edema to both of her ankles. (R. 288, 289, 292, 297, 301). On January 18, 2015, Plaintiff made an emergency room visit for a headache with vertigo and nausea. (R. 257-64).

B.  *Treatment with Dr. Hermansen*

On April 6, 2018, Plaintiff received treatments from Dr. Rex Hermansen. (R. 319-21). Dr. Hermansen reported that Plaintiff complained of right ankle pain. (R. 319). Dr. Hermansen diagnosed Plaintiff with "2+ deep tendon reflexes, no edema, no joint erythema, no warmth, no swelling, and she walked without a limp." (R. 321). Plaintiff was referred to rehabilitative medicine for the ankle. (R. 321). The doctor stated that the "main concern is chronic ankle pain." (R. 321).

C.  *Treatment with Dr. Ram Ravi*

On April 25, 2018, Plaintiff underwent a consultative examination by Dr. Ram Ravi, a consultative physician, on behalf of the SSA. (R. 324-27). Dr. Ravi indicated that Plaintiff had a mild degenerative joint disease. (R. 326, 328, 329). Dr. Ravi diagnosed Plaintiff with right ankle pain and diabetes. (R. 326). Dr. Ravi found that Plaintiff had no limitations in sitting but moderate limitations in standing, walking, bending, pushing, pulling, lifting, and carrying due to right ankle pain. (R. 326). Plaintiff was referred to physical therapy for ankle range of motion and strengthening. (R. 332).

D.  *Treatment with Dr. Silvia Aguiar*

On March 19, 2019, Plaintiff was examined by Dr. Silvia Aguiar, a consultative physician, on behalf of the SSA. (R. 397-400). Plaintiff's chief complaints were vertigo, hypertension, and diabetes. (R. 397). Dr. Aguiar noted Plaintiff's history of vertigo since 2013, diabetes since 2013, and hypertension since 2011. (R. 397). Dr. Aguiar diagnosed Plaintiff with hypertension, non-insulin-dependent diabetes mellitus, and vertigo by history. (R. 399). Dr.

Aguiar assessed that Plaintiff should avoid any positional activity that requires balance due to her history of vertigo. (R. 400).

    E. *Physical Therapy Visits*

Plaintiff underwent physical therapy at Fort Washington – Williamsburg Physical Therapy, P.C. ("Fort Washington PT"), on various dates between September 13, 2018, and March 11, 2019. (R. 450-516). The treatment notes show that Plaintiff's descriptions of her pain, factors[1] which aggravated it, and difficulties with activities at home were consistent throughout this period. She had pain in her "right ankle/foot and joint stiffness." (R. 451, 459, 460, 463, 469, 471, 473, 475, 477, 486, 488, 495, 499, 501, 503, 505, 507, 513). Plaintiff described having difficulty with daily household activities such as laundry and cleaning, as well as limitations with walking, moving around, using stairs, and standing. (R. 451, 459, 460, 463, 469, 471, 473, 475, 477, 486, 488, 495, 499, 501, 503, 505, 507, 513).

    F. *The ALJ's Decision*

The ALJ applied a five-step analysis and concluded that Plaintiff was not disabled under the SSA. (R. 32-39). The ALJ found that Plaintiff had the following severe impairments: vertigo, diabetes, hypertension, Achilles tendonitis on the right, and obesity. (R. 34). The ALJ found that these impairments did not fall under any of the impairments listed under the SSA's Listings. (R. 34). Based on Plaintiff's medical history, the ALJ concluded that Plaintiff had the RFC to perform light work. (R. 34).

---

[1] The factors that aggravated Plaintiff's pain were standing, walking, and taking stairs up and down. (R. 450, 459, 461, 468, 470, 472, 474, 476, 485, 487, 494, 498, 500, 502, 504, 506, 512).

**III.     Analysis**

    A.  <u>Applicable Law</u>

    **1. Standard of Review**

A motion for judgment on the pleadings should be granted if the pleadings make it clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 12(c). However, a court's review of the commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the commissioner and whether the correct legal standards were applied. 42 U.S.C.A. § 405(g). Substantial evidence is more than a mere scintilla but requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must accept the ALJ's findings unless "a reasonable factfinder would have to conclude otherwise." *Id*.

    **2. Determination of Disability**

To be awarded disability benefits, the SSA requires that the claimant be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). An ALJ makes this determination through a five-step evaluation process, where the burden rests on the plaintiff for the first four steps and only after all four

steps are satisfied does the burden then shift to the commissioner for the final step. 20 C.F.R. § 416.920.

First, an ALJ must determine that the plaintiff is not currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4). Second, an ALJ must find that the plaintiff's impairment is so severe that it limits her ability to perform basic work activities. *Id*. Third, an ALJ must evaluate whether the plaintiff's impairment falls under one of the Listings, such that she may be presumed to be disabled. Absent that, an ALJ must then determine the claimant's RFC, or her ability to perform physical and mental work activities on a sustained basis. *Id*. Fourth, an ALJ then evaluates if the plaintiff's RFC precludes her from meeting the physical and mental demands of her prior employment. *Id*. If the plaintiff has satisfied all four of these steps, the burden then shifts to the commissioner to prove that based on the plaintiff's RFC, age, education, and past work experience, the plaintiff is capable of performing some other work that exists in the national economy. *Id.*

B. <u>Analysis of ALJ's Decision</u>

Plaintiff rests her appeal upon five issues she cites in the ALJ's decision. Plaintiff claims that the ALJ failed to: (1) consider the medical evidence of Plaintiff's diabetes and ankle impairment in making a finding on disability; (2) give credit to Plaintiff's testimony regarding her disability; and (3) adequately develop the record. Plaintiff also claims that: (1) the ALJ cherry-picked evidence, and (2) the Social Security Administration failed to meet its burden to demonstrate that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

1. **The ALJ Properly Considered the Medical Evidence of Plaintiff's Diabetes and Ankle Impairment in Making a Finding on Disability.**

An ALJ must discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Plaintiff contends that the ALJ did not properly consider the medical evidence of Plaintiff's diabetes and ankle impairment. (ECF 32 at 17-20) (Joint Stipulation, hereinafter "Stip."). Contrary to Plaintiff's allegation, the ALJ went through a five-step evaluation and properly considered objective and clinical medical evidence. (R. 33-37). At step two, the ALJ found that Plaintiff's impairments of vertigo, diabetes, hypertension, Achilles tendonitis on the right, and obesity were severe. (R. 34). At step three, the ALJ considered whether the medical evidence showed that these impairments satisfied the criteria of the Listings. *Id.* The ALJ reasoned that "no medical source mentioned findings equivalent in severity to the criteria of any listed impairment." *Id.* At step four, the ALJ considered the objective medical evidence of diabetes and ankle impairment. (R. 35) ("[A]n x-ray of the right ankle revealed no evidence of acute fracture, dislocation, or destructive bony lesion," "an x-ray showed evidence of mild medial degenerative joint disease, including joint space narrowing and osteophyte formation," "an x-ray of the right foot revealed evidence of prominent enthesophyte at the Achilles tendon insertion to the calcaneus and mineralization along the course of the distal Achilles tendon"). At step four, the ALJ also considered clinical examination results. (R. 35). The ALJ found that Plaintiff "presented with no edema, no joint erythema, warmth or swelling of the joints," "walked without a limp and presented with no focal neuro deficits," "retained an antalgic gait, was unable to walk on heels and toes, and was only able to perform fifteen percent of a full squat," and "used a cane for standing, pain, weight

7

bearing, and balance that was prescribed by a treating doctor." (R. 35). The ALJ also found that Plaintiff had "no sensory abnormalities noted, nor joint effusion, inflammation or instability, equal and physiologic reflexes," "no visible swelling, tenderness to palpation over posterior calcaneus at Achilles tendon insertion, normal range of motion, and pain over the posterior calcaneus with plantar flexion," and "retained a normal gait, was able to walk on heels and toes without difficulty, retained a full squat and a normal stance." (R. 35).

**2. The ALJ Failed to Properly Evaluate Plaintiff's Subjective Statements.**

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms "are not entirely consistent with the medical and other evidence in the record." (R. 35). An individual's allegations cannot be rejected "because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2). In this case, the ALJ failed to appropriately give credit to numerous statements reflected in the numerous physical therapy records regarding the pain level in her ankle and foot as well demonstrating, over a long term, a history of difficulty with daily activities. (R. 489, 494, 499, 500, 502, 504, 506). The physical therapy reports covering September 2018 to March 2019 consistently reflect pain and difficulty with daily activities while the ALJ failed to address these reports. (R. 450-516).

**3. The ALJ Properly Evaluated All of Plaintiff's Medical Records and Considered the Persuasiveness of Opinions from All Medical Sources.**

An ALJ may not "cherry-pick" evidence by "improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." *Jacobs v. Saul*, 482 F. Supp. 3d 23, 27–28 (E.D.N.Y. 2020). However, this does not mean that an ALJ is required to accept or reject a medical expert's opinion in its entirety. *Annabi v. Berryhill*, No. 16-CV-957, 2018 WL

1609271, at *16 (S.D.N.Y. Mar. 30, 2018). What is required is that an ALJ explains the basis for her findings with sufficient specificity to enable the court to conduct a meaningful review. *Withus v. Saul*, No. 18-CV-10923, 2021 WL 2102270, at *11 (S.D.N.Y. May 19, 2021).

The ALJ properly evaluated all of Plaintiff's medical records and considered the persuasiveness of opinions from all medical sources. Plaintiff contends that the ALJ considered only selective evidence of Plaintiff's ankle pain, the impact of diabetes, and vertigo. (Stip. at 31-32). As to Plaintiff's ankle pain, the ALJ discussed objective and clinical findings which were normal. (R. 34-37). The ALJ found that Plaintiff had "full range of motion upper and lower extremities," had "no edema, no joint erythema, warmth of swelling of the joints," and "walked without a limp and presented with no focal neuro deficits." (R. 34-37). Equally, the ALJ also described abnormal clinical and objective findings. (R. 34-37). The ALJ found that Plaintiff "retained an antalgic gait," had "decreased range of motion of the ankles," and had "a mild medial degenerative joint disease, including joint space narrowing and osteophyte formation". (R. 34-37). As to the impact of Plaintiff's diabetes, the ALJ's decision shows he considered the medical evidence of Plaintiff's diabetes and its effects. (R. 36). The ALJ found that Plaintiff "reported conservative treatment consisting of medication and dietary restriction," "denied hospitalizations due to uncontrolled diabetes," and "had [no] adverse impact upon co-existing impairments." (R. 36). As to vertigo, the ALJ considered Dr. Aguiar's opinion and Plaintiff's history of vertigo. (R. 36-37). The ALJ found that Plaintiff achieved significant improvement of symptoms with the medications prescribed. (R. 36-37).

### 4. The ALJ Properly Developed the Record.

An ALJ has a special duty to protect the rights of a *pro se* claimant in developing the medical record. *Lopez v. Sec'y of Dept. of HHS*, 728 F.2d 148, 149 (2d Cir. 1984); *see also Bluvband v. Heckler*, 730 F. 2d 886, 892 (2d Cir. 1984); *Cruz v. Sullivan*, 912 F.2d 8, 12 (2d Cir. 1990). An ALJ does so by ensuring that all of the relevant facts are sufficiently developed and considered, and by scrupulously and conscientiously probing into, inquiring of, and exploring all relevant facts. *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009). To determine whether a claimant received a fair and adequate hearing, a court must consider whether an ALJ adequately assisted the claimant in developing the record by asking questions regarding the disposition and extent of the claimant's subjective symptoms. *Rivera v. Barnhart*, 379 F. Supp.2d 599, 606 (S.D.N.Y. 2005).

Plaintiff claims that the ALJ failed his duty by failing to ask Plaintiff questions that would provide more details regarding the very summary statements she made about her condition. (Stip. at 39). Contrary to Plaintiff's allegation, the ALJ asked adequate and appropriate questions to understand whether the record contained reports from Plaintiff's treating sources. (R. 49-51). The ALJ asked about: (1) Plaintiff's recently undergone emergency and inpatient hospital treatments (R. 50); (2) names, dates, and addresses for Plaintiff's treating sources (R. 51-52); (3) Plaintiff's work experience (R. 55-56); (4) Plaintiff's medications and physical therapy (R. 60-62); (4) Plaintiff's daily activities. (R. 62-63). The ALJ's extensive and comprehensive questions are fully compliant with the ALJ's obligation to adequately inquire about Plaintiff's subjective complaints and the impact of her impairments on her RFC.

   5. **The Social Security Administration Failed to Meet Its Burden to Demonstrate that there are Jobs that Exist in Significant Numbers in the National Economy that Plaintiff can Perform.**

The ALJ states that "the vocational expert ("VE") opined that given all of these factors, the individual would be able to perform the requirements of representative occupations such as: hand packager, ticket seller and final assembler." (R. 38-39). Relying on that expert, the ALJ determined that the Plaintiff was not disabled. (R. 39). Plaintiff contends that the VE's interrogatories are defective because: (1) the VE did not testify at the hearing and the VE's interrogatories were not signed under oath (Stip. at 49); and (2) the hypothetical examples provided to the VE do not reflect the true RFC of Plaintiff. (Stip. at 53).

Here, the ALJ opted to obtain VE testimony through post-hearing interrogatories (R. 207-13, 215-20) and this approach is permitted. *Martinez v. Comm'r of Soc. Sec.*, No. 18-CV-01570, 2019 WL 3852439, at *10 (S.D.N.Y. Aug. 16, 2019) (noting that VE testimony "may be obtained in any appropriate form, including written interrogatories.") With regard to Plaintiff's second part of her first allegation, the VE did not sign the interrogatives under oath. Each interrogatory should be answered separately and fully in writing under oath. Fed. R. Civ. P. 33(b)(3). Answers to defendants' interrogatories that were not signed by the respective plaintiffs were a violation of the rules. *See Nagler v. Admiral Corp*, 167 F. Supp. 413 (S.D. N.Y. 1958). However, since this Court decides the case for the reasons listed above and Plaintiff did not challenge the impartiality, expertise, or professional qualifications of the VE, the ALJ could easily fix this problem in the future hearings.

With regard to Plaintiff's second allegation, the ALJ properly relied on the interrogatories as the basis for his step five finding that Plaintiff could perform other work in

the national economy. An ALJ may rely on a VE's testimony regarding a hypothetical as long as "there is substantial evidence to support the assumption[s] upon which the VE based his opinion." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). Here, the VE identified that Plaintiff could perform jobs like: hand packager (DOT job code 559.687-74), ticket seller (DOT job code 211.467-039), and final assembler (DOT job code 789.687-046). (R. 218).

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**, and the decision of the Commissioner of Social Security is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

**SO ORDERED.**

*s/ Ona T. Wang*

Dated: March 21, 2023
New York, New York

**Ona T. Wang**
United States Magistrate Judge